IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MICHAEL FAULKNER,               )    Civ. No. 21-00299 HG-RT
                                )
            Plaintiff,          )
                                )
      vs.                       )
                                )
KILOLO KIJAKAZI, Acting         )
Commissioner of Social          )
Security,                       )
                                )
            Defendant.          )
_____)

**ORDER AFFIRMING THE DECISION OF THE**
**SOCIAL SECURITY ADMINISTRATION COMMISSIONER**

This case involves the appeal of the Social Security Administration Commissioner's decision to deny Plaintiff Michael Faulkner's application for Disability Insurance Benefits.

On February 25, 2020, Plaintiff filed an application for Disability Insurance Benefits, claiming he was disabled as of February 14, 2020.  Plaintiff's application alleges functional limitations predominately stemming from the condition of his lower back, right foot, and shoulders.

The Social Security Administration denied Plaintiff's initial application and his request for reconsideration. Following an administrative hearing, the Administrative Law Judge ("ALJ") held that Plaintiff was not disabled from February 14, 2020 to March 9, 2021, the date of the ALJ's written decision.

The Social Security Administration Appeals Council denied

1

Plaintiff's request for further review, rendering the ALJ's decision the final administrative decision of the Social Security Commissioner.

The Court **AFFIRMS** the decision of Social Security Administration Commissioner to deny Plaintiff's application.

## PROCEDURAL HISTORY

On February 25, 2020, Plaintiff Michael Faulkner applied for Disability Insurance Benefits with the Social Security Administration.  (Administrative Record [hereinafter "AR"] at pp. 151-58, ECF No. 11).

On September 4, 2020, the Social Security Administration denied Plaintiff's application.  (Id. at pp. 89-92).

On September 20, 2020, Plaintiff sought reconsideration of the Social Security Administration's initial decision.  (Id. at p. 93).

On November 18, 2020, the Social Security Administration denied Plaintiff's application upon reconsideration.  (Id. at pp. 94-96).

On November 24, 2020, Plaintiff requested a hearing before an ALJ.  (Id. at pp. 97-98).

On February 24, 2021, the ALJ held a hearing on Plaintiff's application.  (Id. at pp. 31-52).  The hearing was held via telephone due to the COVID-19 pandemic.  Plaintiff appeared by

phone and testified at the hearing.

On March 9, 2021, the ALJ issued a written decision denying Plaintiff's application.  (Id. at pp. 13-30).

On June 8, 2021, the Social Security Administration Appeals Council denied Plaintiff's request for further review of the ALJ's decision.  (Id. at pp. 1-7).  The ALJ's decision became the final administrative decision of the Social Security Administration Commissioner after Plaintiff was denied further review.

On July 6, 2021, Plaintiff filed a Complaint seeking judicial review of the Social Security Administration Commissioner's denial of his application.  (ECF No. 1).

On January 7, 2022, Defendant filed the Administrative Record.  (ECF No. 11).

On March 7, 2022, Plaintiff filed PLAINTIFF'S OPENING BRIEF. (ECF No. 13).

On May 9, 2022, Defendant filed DEFENDANT'S ANSWERING BRIEF. (ECF No. 20).

On June 1, 2022, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 23).

On June 13, 2022, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.  (ECF No. 24).

**BACKGROUND**

Plaintiff is a fifty-eight year-old man with a high school education.  (AR at pp. 37, 151, ECF No. 11).

Plaintiff claims an onset date of disability on February 14, 2020.

## I. Plaintiff's Work History

Plaintiff is a veteran who served with the U.S. Air Force for over twenty-two years.  (Id. at pp. 37-38).  From 2004 to 2007, Plaintiff served as a Superintendent of Fleet Service for the Air Force.  (Id. at pp. 37, 65).  Plaintiff oversaw the work of thirty people and was in charge of providing aircraft with supplies.  (Id. at pp. 37-38).

From 2007 to 2009, Plaintiff worked as a Motor Vehicle Dispatcher.  (Id. at pp. 38, 64, 194).  Plaintiff was responsible for dispatching vehicles that were used by the Army to relocate cargo. (Id. at pp. 38-39).  Plaintiff testified that this role required a combination of standing and sitting, but did not require him to engage in lifting.  (Id. at p. 39).

From 2009 to 2013, Plaintiff worked in passenger services at Hickam Air Force Base.  (Id. at pp. 39, 65, 194).  He used vehicles to process and load passenger luggage onto and off of aircraft.  (Id. at p. 39).  Plaintiff regularly lifted up to fifty pounds.  (Id.)

4

From September 2013 to February 2020, Plaintiff was a driver for the U.S. Department of Veterans Affairs.  (Id. at pp. 39-40, 180, 195).  He provided shuttling services to veterans in a thirty-two person passenger bus as well as a nine-passenger van. (Id. at pp. 39-40).

Plaintiff testified that he stopped working as a result of the pain he experienced from his lower back, shoulders, and right foot.  (Id. at pp. 40-41).

## II.  Plaintiff's Medical History

Plaintiff's application for Disability Insurance Benefits claims the following conditions:

**Lumbar Spine:**  Plaintiff's medical records reflect degenerative disc disease of the lumbar spine.  Imaging of Plaintiff's lower back shows disc narrowing at multiple levels, slipping of vertebrae, and facet joint osteoarthrosis, a condition in which the cartilage between joints deteriorates. (Id. at pp. 265-73, 585).

**Bilateral Shoulder Conditions:** Plaintiff has rotator cuff injuries on both his left and right shoulders.  (Id. at pp. 390-93, 587-90).  Plaintiff's left shoulder exhibits impingement syndrome, which results in irritation and inflammation from repetitive stress, and tearing of the tendons.  (Id. at pp. 390-93).  The supraspinatus tendon in Plaintiff's right shoulder

exhibits tearing.  (<u>Id.</u> at p. 589).

**Toenail Condition:**  Plaintiff's medical records indicate that he has had onychia on the first and second toes of his right foot, a condition involving inflammation of the area around the toenail that often leads to loss of the nail.  (<u>Id.</u> at p. 587).

**Obstructive Sleep Apnea**:  Plaintiff has sleep apnea.  He uses a sleep apnea machine which helps him "100%."  (<u>Id.</u> at p. 42).

Plaintiff reported having Post-Traumatic Stress Disorder (PTSD) in his original application, but later testified that the inclusion of PTSD in his application was a mistake.  (<u>Id.</u> at pp. 19, 46).  Plaintiff testified that he has no psychological conditions that would prevent him from working.  (<u>Id.</u>)

<u>**STANDARD OF REVIEW**</u>

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see</u> 42 U.S.C. § 1382c(a)(3)(A); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

### I.   Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits pursuant to the Social Security Act, 42 U.S.C. § 423.  The Commissioner of the Social Security Administration evaluates a disability claim using the following five-step sequential analysis:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional

capacity to perform his past relevant work?  If so, the
claimant is not disabled.  If not, proceed to step
five.

(5)   Does the claimant's residual functional capacity, when
      considered with the claimant's age, education, and work
      experience, allow him to adjust to other work that
      exists in significant numbers in the national economy?
      If so, the claimant is not disabled.  If not, the
      claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.

2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

A claimant alleging disability has the burden of proof at

steps one through four, and the Commissioner has the burden of

proof at step five.  Bustamante v. Massanari, 262 F.3d 949,

953-54 (9th Cir. 2001).

## II.  The ALJ Applied the Five-Step Evaluation

The ALJ evaluated Plaintiff's disability claim using the

five-step analysis.

At step one, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since the alleged onset date of his

disability, February 14, 2020.  (AR at p. 18, ECF No. 11).

At step two, the ALJ found Plaintiff had the following

severe impairments that significantly limit his ability to

perform basic work activities: multilevel degenerative disc

disease of the lumbar spine; onychia of the first and second toes

of the right foot, a condition which causes inflammation around

the toenail; impingement syndrome of the left shoulder, with

8

partial tears; tendinosis of the right shoulder; and obstructive sleep apnea.  (Id. at p. 19)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

At step four, after having considered the entire record, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), subject to certain limitations.  The ALJ listed Plaintiff's limitations in the following manner, indicating he could:

> lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for 4 hours out of 8; sit for 6 hours out of 8; occasional postural activities; occasional stairs and ramps; occasional hazardous machinery and unprotected heights; no ladders, ropes, or scaffolds; and frequent bilateral reaching, but only occasional bilateral above shoulder reaching.

(Id. at p. 20).

The ALJ concluded that Plaintiff was capable of performing past relevant work as a Motor Vehicle Dispatcher, as generally performed.  (Id. at p. 25).

The Parties do not dispute the ALJ's conclusions as to the first three steps of the evaluation.

## III. The ALJ Properly Denied Plaintiff's Application

This appeal from the decision of the Social Security

Administration Commissioner focuses on the ALJ's findings at step four.

The ALJ determined that Plaintiff had the residual functional capacity to perform light work, subject to certain limitations.  Based on his residual functional capacity, the ALJ concluded that Plaintiff was capable of past relevant work as a Motor Vehicle Dispatcher.  The ALJ reached this conclusion after consideration of the entire record, including Plaintiff's testimony and the medical evidence in the record.

On appeal, Plaintiff contests two aspects of the ALJ's decision:

First, Plaintiff argues that the ALJ committed legal error by failing to adequately consider the medical opinion of Dr. Antoine Cazin.

Second, Plaintiff challenges the ALJ's finding as to his capacity for past relevant work.  Plaintiff argues that the ALJ erroneously relied on testimony provided by the Vocational Expert.

Plaintiff's arguments are not supported by the record before the Court.

## IV.  The ALJ's Evaluation of the Medical Opinions Was Proper

The ALJ is required to consider all "relevant evidence" in the administrative record, including all medical opinions, in

determining whether a claimant is disabled.  20 C.F.R. §
404.1527.  "[I]t is the responsibility of the ALJ, not the
claimant's physician, to determine residual functional capacity."
Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing
20 C.F.R. § 404.1545).

On January 18, 2017, the Social Security Administration
issued revised guidance regarding the evaluation of medical
opinions.  See Revisions to Rules Regarding the Evaluation of
Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The
revised regulations identify various factors that must be
considered in the evaluation of medical opinions, the most
important of which are the factors of "supportability" and
"consistency."  20 C.F.R. § 404.1520c(a).

Pursuant to the revised regulations, the agency is required
to articulate how persuasive it finds all of the medical opinions
in the record and must "explain how [it] considered the
supportability and consistency factors" in reaching its findings.
20 C.F.R. § 404.1520c(b); see also Woods v. Kijakazi, 32 F.4th
785, 793 (9th Cir. 2022).

The revised regulations provide the following definitions of
supportability and consistency:

> **Supportability.** The more relevant the objective medical
> evidence and supporting explanations presented by a
> medical source are to support his or her medical
> opinion(s) or prior administrative medical finding(s),
> the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> **Consistency**. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c).

The Ninth Circuit Court of Appeals has recently explained that an ALJ's decision to discredit or reject a medical opinion need only be supported by substantial evidence. <u>Woods</u>, 32 F.4th at 787.

## A.   Medical Evidence Supporting the ALJ's Decision

The record in this case shows that Plaintiff's claims of significant functional limitation were not supported by the medical evidence and other materials in the record.

Plaintiff testified as having significant functional limitations resulting from his symptoms.  Plaintiff's claimed limitations include an inability to sit, stand, or walk for any length of time without pain; inability to lift or reach above his head using his right shoulder; pain in his lower right back and buttocks; and difficulty kneeling, climbing stairs, bending, and squatting.  (AR at pp. 20, 40-42, ECF No. 11).  Plaintiff claimed he could stand and walk for approximately fifteen to twenty minutes, and that he could sit for half an hour at most.  (<u>Id.</u>)

The ALJ explained that the medical evidence and reports in Plaintiff's case did not support the limitations he claimed.

(<u>Id.</u> at p. 21).  The ALJ explained that despite Plaintiff's
testimony regarding his inability to sit, stand, or walk, medical
records revealed that Plaintiff had told medical providers that
he "walks about 15 miles a week," does housework and yardwork
during the day, and denied balance problems.  (<u>Id.</u> at pp. 21,
633).  During his annual check-up with Dr. Rosalynn Kim on August
5, 2020, Plaintiff reported that his back pain was under control,
that he was doing "OK," and that he was using his sleep apnea
machine every night.  (<u>Id.</u> at pp. 21, 622-24).

A contemporaneous examination by Dr. Antoine Cazin conducted
on August 18, 2020 found that Plaintiff did not appear limited in
his ability to walk or stand; was able to walk on his heels and
tiptoes; was able to climb onto the examination table; had a
walking gait within normal limits; and had full range of motion
and strength in his extremities.  (<u>Id.</u> at pp. 21, 586-90).

The ALJ evaluated various medical opinions in addition to
clinical report findings.  For example, the ALJ considered two
opinions rendered by state agency medical consultants, Dr. N.
Shibuya and Dr. W. Matsuno.  (<u>Id.</u> at p. 23).  Dr. Shibuya and Dr.
Matsuno evaluated the medical evidence in Plaintiff's case and
determined that he is capable of light work, subject to some
limitations.  (<u>Id.</u> at pp. 54-66, 68-86).  Both doctors' opinions
highlighted evidence in the record that contradicted Plaintiff's
claims of significant pain and difficulty walking, standing, and

sitting.

For example, Dr. Shibuya referenced evidence that Plaintiff is able to cook, clean, shop, drive, and walk for a mile.  (Id. at p. 59).  Dr. Shibuya noted that Plaintiff does not take pain medication and has not had surgery.  (Id.)  Dr. Shibuya found that Plaintiff had normal range of joint motion, strength, sensation, reflexes, and manipulation.  (Id.)  Plaintiff was also observed to walk with mildly altered gait, but with no assisted device, and he was able to heel/toe walk.  (Id.)

Similarly, Dr. Mastuno pointed to evidence that Plaintiff walks approximately fifteen miles a week, does housework and yardwork, and does not want to take pain medication.  (Id. at pp. 75-76).  Dr. Mastuno concurred in Dr. Shibuya's conclusions. (Id.)

The ALJ properly found that the state agency medical opinions were supported and consistent with the overall record. (Id. at p. 23).

### B.   Dr. Antoine Cazin's Opinion

The ALJ evaluated the consultative examiner Dr. Antoine Cazin's August 18, 2020 medical opinion.  (Id. at p. 23).  The ALJ found that Dr. Cazin's opinion was unpersuasive.

Dr. Cazin opined that, as a result of Plaintiff's back condition, he was "moderately to markedly limited in his ability

to do work-related activities such as walking, standing, lifting, or carrying." (AR at pp. 23, 590, ECF No. 11). Dr. Cazin stated that Plaintiff's foot, neck, and shoulder conditions add to his difficulties. (Id.)

The ALJ noted that the limitations Dr. Cazin provided were "undefined," and explained that he did not find Dr. Cazin's opinion persuasive because it was "not well supported, nor consistent." (Id. at p. 23).

Terms such as "moderate" and "marked" are commonly used in the Social Security context, and they suggest a significant limitation. See, e.g., Mendieta v. Colvin, 2017 WL 942901, at *6 (W.D. Wash. Mar. 9, 2017). The Social Security regulations define the terms "moderate" and "marked" with respect to mental impairments, but those definitions do not apply where, as here, a claimant's physical limitations are at issue. Bryson v. Berryhill, 2018 WL 4682322, at *6 n.3 (D. Idaho Sept. 28, 2018); Turner v. Berryhill, 693 F. App'x 722, 723 (9th Cir. 2017) (noting that the definitions used to evaluate mental impairments do not provide definitions to be used by an ALJ in interpreting the language of a medical opinion).

Despite using such terms to describe Plaintiff's limitations, Dr. Cazin's opinion did not define the meaning of "moderate[] to marked[]" in reference to Plaintiff's limitations. For this reason, the ALJ noted the lack of definition in Dr.

Cazin's opinion.  (AR at p. 23, ECF No. 11).

The ALJ provided a written explanation of his findings regarding Dr. Cazin's opinion pursuant to the supportability and consistency factors:

**Supportability**: Dr. Cazin's own clinical findings did not support his conclusion that Plaintiff should be subject to significant limitations with respect to his ability to walk, stand, lift, or carry.  The ALJ explained this inconsistency by summarizing Dr. Cazin's clinical findings.  (Id. at p. 23).  Dr. Cazin's August 18, 2020 examination findings specifically state that Plaintiff did "not appear to be limited in his ability to sit, walk or stand," was "able to climb with no difficulty up on the examination table," and could walk on his heels and tiptoes. (Id. at pp. 588-89).  Dr. Cazin found that Plaintiff's gait was "within normal limits" or "may be slightly antalgic."  (Id. at p. 588).  Plaintiff also exhibited full range of motion of all the joints of his upper and lower extremities; intact sensation to light and pinprick touch; and full muscle strength in his upper and lower extremities.  (Id. at p. 589).

The ALJ properly explained how Dr. Cazin's opinion was contradicted by Dr. Cazin's own clinical findings.

**Consistency**: In addition to being unsupported by his own clinical findings, the ALJ found that Dr. Cazin's opinion was also inconsistent with other medical evidence in the record.

16

The ALJ cited and relied on medical evidence contrary to Dr. Cazin's opinion.  The ALJ pointed out that contemporaneous treatment notes from other medical providers were inconsistent with Dr. Cazin's opinion.  For example, treatment notes by Nurse Practitioner Colleen Thibault dated June 29, 2020 reported that Plaintiff "walks about 15 miles a week," "denied tingling, weakness, or balance problems," and does housework, yardwork, and goes for walks.  (Id. at pp. 21, 633).  Dr. Rosalynn Kim's August 5, 2020 treatment notes show that Plaintiff reported that his back condition was under control and was "OK."  (Id. at pp. 21, 622-24).

The evidence relied upon by the ALJ is inconsistent with Dr. Cazin's opinion.  The ALJ properly declined to credit Dr. Cazin's opinion and explained that the opinion did not have the necessary consistency to be reliable.

**C.   The ALJ Properly Rejected Dr. Cazin's Opinion**

Plaintiff argues that the ALJ failed to evaluate Dr. Cazin's opinion in terms of its consistency with the record.  Plaintiff's argument is unpersuasive.  The ALJ's reasoning with respect to the consistency of Dr. Cazin's opinion is clear from the written decision.

The ALJ is required to explain the consistency of the opinion with "other medical sources and nonmedical sources in the

claim."  20 C.F.R. § 404.1520c(c).  The ALJ's decision focuses on the internal inconsistencies of Dr. Cazin's opinion, but also cites other findings in clinical reports inconsistent with Dr. Cazin's conclusion.  The ALJ outlined the medical evidence showing that Plaintiff continued to engage in daily activities, including activities that involved significant exertion, and the ALJ also pointed to the clinical reports showing that Plaintiff's back condition was well-managed.  (AR at p. 21, ECF No. 11).

Substantial evidence supports the ALJ's findings with respect to the supportability and consistency of Dr. Cazin's opinion.  Woods, 32 F.4th at 793.

## V.   The ALJ Properly Relied on Vocational Expert Testimony

Plaintiff contests the ALJ's findings regarding Plaintiff's ability to do past relevant work as a Motor Vehicle Dispatcher. Plaintiff argues that his residual functional capacity conflicts with the job requirements of a Motor Vehicle Dispatcher as defined by the Dictionary of Occupational Titles ("DOT").

The ALJ found that Plaintiff was capable of "frequent bilateral reaching, but only occasional bilateral above shoulder reaching."  (AR at p. 20, ECF No. 11).  The DOT requires that a Motor Vehicle Dispatcher be able to engage in "frequent reaching."  DOT, 249.167-014, 1991 WL 672312.  Reaching is defined as the ability to extend one's arms and hands in any

direction.  Social Security Ruling 85-15.

Plaintiff takes issue with two aspects of the ALJ's decision:

First, Plaintiff claims that the ALJ failed to ask the Vocational Expert whether his testimony conflicted with the DOT. Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ must ask whether the Vocational Expert's testimony conflicts with the DOT before they rely on that testimony.  Massachi v. Astrue, 486 F.3d 1149, 1150 (9th Cir. 2007).  In this case, the ALJ specifically asked that the Vocational Expert "please let [him] know" whether his testimony "is any different than the DOT."  (AR at p. 46, ECF No. 11).  The ALJ's inquiry satisfied his obligation pursuant to SSR 00-4p.  Sanchez v. Colvin, 2016 WL 370687, at *16 (C.D. Cal. Jan. 29, 2016).

Second, Plaintiff contends that the ALJ erred by failing to further probe the Vocational Expert as to the alleged conflict.

If the Vocational Expert's opinion of the claimant's work capabilities conflicts with the job requirements listed in the DOT "then the ALJ must ask the expert to reconcile the conflict before relying on the expert."  Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016).  Precedent from the Ninth Circuit Court of Appeals is clear that a conflict between expert testimony and the DOT "must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further."  Lamear v. Berryhill, 865 F.3d

19

1201, 1205 (9th Cir. 2017) (quoting <u>Gutierrez</u>, 844 F.3d at 808).

"The requirement for an ALJ to ask follow up questions is

fact-dependent," and common experience may guide the result.

<u>Gutierrez</u>, 844 F.3d at 808.

This case resembles <u>Gutierrez</u>.  In <u>Gutierrez</u>, the claimant

was subject to an overhead reaching limitation.  844 F.3d at 808.

The Vocational Expert in <u>Gutierrez</u> testified that the claimant

could perform work as a cashier, a job for which "frequent

reaching" is required according to the DOT.  <u>Id.</u>  The court in

<u>Gutierrez</u> held that the ALJ was not required to elicit further

testimony from the Vocational Expert because the cashier job

requirements were not obviously or apparently in conflict with

the claimant's overhead reaching limitation.  <u>Id.</u>  The court

stated that although "reaching" is defined as "the ability to

extend one's hands and arms 'in any direction,' not every job

that involves reaching requires the ability to reach overhead."

<u>Id.</u> (citing SSR 85-15, 1985 WL 56857, at *7 (1985)).

The same result is warranted here.  Although the job of

Motor Vehicle Dispatcher requires frequent reaching, it does not

obviously require overhead reaching.  The DOT lists Motor Vehicle

Dispatcher as a clerical job and states that a dispatcher must

compile lists of available vehicles; assign vehicles to drivers;

issue keys and other equipment to drivers; record times of

departure and expected time of return; investigate overdue

vehicles; communicate with drivers using a radio; confer with customers; and other similar activities.  DOT, Motor Vehicle Dispatcher, 249.167-014, 1991 WL 672312.  Nothing in the definition of a Motor Vehicle Dispatcher indicates that a dispatcher would need to engage in overhead reaching.

Plaintiff's limitation of "frequent bilateral reaching, but only occasional bilateral above shoulder reaching" does not obviously conflict with the responsibilities of a Motor Vehicle Dispatcher.  The ALJ had no obligation to elicit further testimony from the Vocational Expert.

The ALJ's reliance on the Vocational Expert's testimony was proper.

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision.  Woods, 32 F.4th at 787.  The ALJ properly rejected Dr. Cazin's medical opinion and appropriately relied on the Vocational Expert's testimony.

//

//

//

//

//

//

//

21

**CONCLUSION**

The Social Security Administration Commissioner's decision is **AFFIRMED**.

The Clerk of Court is Ordered to **CLOSE THE CASE.**

DATED: July 13, 2022, Honolulu, Hawaii.

IT IS SO ORDERED.



Helen Gillmor
United States District Judge

Michael Faulkner v. Kilolo Kijakazi, 21-cv-00299 HG-RT, **ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER**                    22